2001 SD 31

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Aaron ANDREWS, Defendant and Appellant.**

**No. 21415.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 2001.

Decided March 14, 2001.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Becky A. Janssen, Pennington County Public Defender's Office, Rapid City, SD, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Aaron Andrews appeals from a judgment of conviction of first degree manslaughter, claiming 1) improper admission of other act evidence, 2) improper admission of expert witness testimony, and 2) failure to give a lesser included jury instruction. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] On the evening of July 12, 1999, Andrews, age 19, and his live-in girlfriend, Tasha Davis, age 21, attended a party at a Box Elder, South Dakota residence. This party was later moved to a Rapid Valley residence where a decision was made to purchase a keg of beer. Andrews supplied the keg's tap, which had been given to him by a deceased cousin and had some apparent sentimental value to him. Some of the individuals partying at the Rapid Valley residence began fighting. The party moved to another residence and the revelers attempted to obtain a second keg of beer. At this location, a fight broke out between Andrews and his uncle, Merv Ledeaux, over Andrews' tap which was found in Ledeaux' vehicle after he told Andrews he did not have it. Several others joined this brief fight before everyone drove away in three separate vehicles.

[¶ 3.] Andrews and his passenger, Tom Zephier, drove to the residence of a friend, Nick Vasquez, in Rapid City. Andrews told Vasquez he had been in a fight and asked to clean up in his bathroom. Andrews retrieved his shotgun and shells from behind his friend's couch. He had earlier brought the gun to Vasquez to try to sell it. Vasquez asked him why he was taking the gun and Andrews told him he wanted to scare Ledeaux.

[¶ 4.] Inside the vehicle, Andrews asked Zephier to load the gun. While Zephier was looking for a shell, he handed the gun back to Andrews who loaded it himself. When Zephier asked if he was looking for anyone, Andrews responded "Merv." Andrews and Zephier proceeded to drive through Rapid City where, on Haines Avenue, they met with one of the other three vehicles from the party. They pulled alongside this vehicle and Andrews asked the whereabouts of Ledeaux. The shotgun was observed sticking 4–5 inches out of the driver's side window.

[¶ 5.] Andrews proceeded north on Haines Avenue with the gun still out the window until he came upon the third vehicle. Davis was in the passenger seat; Ledeaux was not in the vehicle. Andrews pulled alongside this vehicle and yelled to the driver to pull over. The gun discharged killing Davis instantly. All three vehicles proceeded a short distance to the residence of Andrews' aunt. Andrews exited his vehicle and began wailing Davis' name and the names of their children. One of the passengers prepared to take Davis to the hospital but Andrews' aunt advised them she had already called the police. Andrews fled and was stopped by police after a brief chase through Rapid City. He walked toward the first officer, making obscene gestures. A second officer approached him from behind and took

him to the ground. As he was being handcuffed, Andrews stated, "I didn't mean to do it; I'm sorry."

[¶ 6.] An autopsy revealed Davis died from the shotgun wound, with the barrel of the gun held 3–5 feet from her head. Andrews was charged with first degree manslaughter and pled not guilty. He was found guilty by a jury and sentenced to serve 30 years in the state penitentiary. He appeals.

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether the trial court abused its discretion in admitting evidence of other acts occurring in the early morning hours of July 13, 1999.**

[¶ 8.] At a pretrial motion hearing, the State informed Andrews and the trial court it did not intend to introduce other act evidence in its case against Andrews. At trial, however, it introduced evidence of Andrews' blood alcohol content and his driving under the influence, his underage consumption of alcohol, his possessing a stolen firearm and possessing it while under the influence. These facts constituted uncharged crimes allegedly committed by Andrews in the hours immediately leading up to the crime of manslaughter. Andrews objected to admission of this evidence at trial on the grounds that it was other act evidence introduced in violation of SDCL 19–12–5.

[¶ 9.] Evidence of other acts requires a two-part balancing analysis by the trial court that must be performed on the record. *State v. Steele*, 510 N.W.2d 661, 667 (S.D.1994). Such analysis did not occur in the present case. However, this evidence was admissible as res gestae evidence. In *State v. Goodroad*, 1997 SD 46, ¶ 10, 563 N.W.2d 126, 130, we held that "[e]vidence of uncharged criminal activity is not considered other crimes evidence if it arose out of the same transaction or series of transactions as the charged offense." We "approved the admission of other crimes where such evidence is 'so

blended or connected' with the one[s] on trial ... that proof of one incident involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged." *Id.* (citing *State v. Floody*, 481 N.W.2d 242, 253 (S.D. 1992)).

[¶ 10.] In *Goodroad*, we affirmed the trial court's admission of evidence of the defendant's other criminal acts leading up to the charged crime over a period of more than a month. Here, the disputed evidence involves events taking place over a period of a few hours. These events were interconnected and part of the continuing chain of activities that night that culminated with Davis' death. It is evidence intricately related to the facts of the case and therefore, admissible without reference to SDCL 19–12–5. *State v. Loftus*, 1997 SD 94, ¶ 18, 566 N.W.2d 825, 829; *State v. Barber*, 1996 SD 96, ¶ 18, 552 N.W.2d 817, 820. This evidence "explains the circumstances" which resulted in Andrews' shooting of Davis and is proper even though it tends to prove Andrews' guilt of other crimes. *Goodroad, supra.*

[¶ 11.] This evidence also addresses Andrews' defense of excusable homicide under SDCL 22–16–30, which provides that "[h]omicide is excusable when committed by accident and misfortune in doing any lawful act, with usual and ordinary caution." This instruction was given at Andrews' request. However, Andrews, underage and driving under the influence through the streets of Rapid City with the barrel of a loaded shotgun pointing out the driver's side window, was not "doing any lawful act" when the gun discharged killing Davis.

[¶ 12.] The trial court did not abuse its discretion in admitting this evidence.

[¶ 13.] **2. Whether the trial court abused its discretion in allowing testimony from Detective Parsons regarding the results of his testing the shotgun.**

[¶ 14.] Five days prior to trial, the State filed a motion for the court's en-

dorsement of five additional witnesses, previously unnoticed. One of these five witnesses, Detective Parsons, of the Rapid City Police Department, had performed tests on the shotgun used to kill Davis. In one of the tests, Parsons had dropped the gun from various heights and positions to determine a pattern, if any, for accidental discharge. Parsons also tested the trigger-pull to determine the amount of pressure necessary to fire the weapon. These tests were performed November 30, 1999 and results were not reduced to written form at the time of the December 2 motion hearing. The testing was described at the hearing. SDCL 19–15–5.2 and 19–15–6 provide that a written report prepared by an expert must be noticed with a copy of the report to the adverse party within a reasonable time before trial.

[¶ 15.] Andrews' objection that Parsons was an expert witness, not a lay witness, was sustained by the trial court. Later in the hearing, however, the court clarified that it only denied Parsons as an expert witness and that if he testified at trial to the facts of his test, and a proper foundation were laid, the court would not consider that to be expert testimony:

Court: I only denied him as an expert witness. If he is involved in any other way with this matter as a witness—I didn't know that he was. I was only referencing the expert witness portion.
State: I guess here's the question I have, Judge. The fact that he fired the gun from various distances and there is results of that, does the Court consider that expert testimony or not?
Court: Absolutely.
State: I can't think of anything that I would, in terms of pounds of pressure on the trigger, as to how much needs to be applied?
Court: If that's all you are showing is how many pounds of pressure and if he used a reliable scale; you can make your foundation. I guess I don't consider that an expert opinion, but if you are going to extrapolate from that any place,

then you are getting into expert testimony.

\* \* \* \*

Defendant: My opinion is, pounds per pressure on testing of a gun is all within the purview of the expertise. He doesn't have any other involvement in this case, other than what he's done with that gun.
Court: If he testifies that if you pushed the lever over and the barrel tips up, do you consider that expert testimony? That's just handling the gun.
Defendant: Right. But if he gets into the pull on the trigger, I think it's at that point you are getting into the purview of the expert testimony.
Court: I guess it depends how they put, how he figured out what the poundage was. There is a regular instrument that you read, just like when you step on your kitchen scale, that will tell you what the pull is. If that's all he did and he sat down and did that, I don't have any problem with that. I don't think that's expert testimony.

\* \* \* \*

State: We will submit Detective Parsons' report to the defense today, even though we can't use it, so they have it, but I understand that we can't use it.

[¶ 16.] Despite this pretrial statement by the State, at trial, Parsons testified that he fired the gun approximately sixteen times on the afternoon of November 30 and tested the shotgun for "potential, accidental discharge." He displayed the gun to the jury and explained his examination of the weapon and his testing procedures. He testified that he could not get the gun to accidentally discharge and stated "[t]his gun cannot be accidentally fired unless your finger is completely on the trigger and held back." Andrews failed to object to this testimony at trial but now claims, on appeal, that this was expert testimony

admitted in violation of the trial court's previous ruling.

■■■ [¶ 17.] SDCL 19–15–2 provides the rule governing expert witnesses in this state:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A lay witness, on the other hand, "may give an opinion if he has personal knowledge of the matter. Nonexpert testimony ... requires no foundation[.]' " *Atkins v. Stratmeyer*, 1999 SD 131, ¶ 17, 600 N.W.2d 891, 897 (citations omitted). Lay witness testimony is limited to "those opinions or inferences which are 1) rationally based on the perception of the witness and 2) helpful to a clear understanding of his testimony or the determination of a fact in issue." SDCL 19–15–1. The admissibility of a claimed expert's opinion is within the discretion of the trial court. The trial court's ruling will be disturbed only in case of a clear abuse of discretion. *State v. Moeller*, 1996 SD 60, ¶ 72, 548 N.W.2d 465, 483. Here, the trial court denied State's motion, brought only five days before trial, to admit Parsons' testimony as an expert witness. We are not asked to review the propriety of this ruling,[1] but whether the trial court abused its discretion in allowing Parsons' testimony at trial.

[¶ 18.] Examination of Parsons' trial testimony shows he clearly had no knowledge of the matter at trial based on his own perceptions. His knowledge was gained through his independent testing of Andrews' shotgun, and his opinion based on the results of those tests. His testimony went beyond the statutory and the trial court's limitations of a lay witness. The subject of his testimony was beyond the knowledge and experience of the average layperson. *State v. McCord*, 505 N.W.2d 388, 391 (S.D.1993); *State v. Hill*, 463 N.W.2d 674, 676 (S.D.1990). During Parsons' explanation of the tests he performed, the test results, and the mechanics of this gun's firing system, he also testified that he had sixteen years of experience with law enforcement, was a firearms instructor for the police department, was certified on various firearms and had in fact handled many firearms. His testimony was that of an expert, not a lay person. *See Campos v. State*, 273 Ga. 119, 538 S.E.2d 447, 448 (2000) (testimony that weapon required eight pounds of pressure on the trigger to fire and had no potential for accidental discharge provided by expert witness); *State v. Bledsoe*, 2000 WL 1717539, *1 (Tenn.Crim.App.2000) (testimony that cylinder of gun would not rotate when gun was set with malfunctioning chamber under its hammer provided by expert witnesses).

■■■ [¶ 19.] Admission of Parsons' testimony that exceeded the trial court's order and the statutory limitations of lay witness testimony was error, which will not be tolerated by this Court in the future. However, Andrews made no objection at trial to this testimony.[2] Failure to object at trial constitutes a waiver of the issue on appeal. *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763. We

---

1. *See State v. Washington*, — N.C.App. —, 540 S.E.2d 388, 395 (2000) (testimony regarding trajectory of gunshot, by police officer who was involved in subsequent investigation but who did not observe shooting, was not admissible as expert testimony where defense laid no foundation of witness' qualifications for giving such opinion and was not admissible as lay witness testimony where defense did not show that proffered opinion testimony was rationally based on witness' perception or helpful to jury's determination of a fact in issue).

2. The only objection Andrews made to Parsons' testimony at trial was on nonresponsive grounds. He did not renew his pretrial objection, sustained by the trial court, regarding expert testimony. *State v. Kaiser*, 504 N.W.2d 96, 102 (S.D.1993) (failure to renew objection at trial waives issue on appeal).

further note that the majority of information regarding Parsons' background and experience with firearms was elicited by Andrews during cross-examination. As this issue is waived from our consideration, we write to preclude this type of end-run tactic in the future which resulted in error, but make no inquiry into the effect of prejudice, if any, resulting from Parsons' testimony.

**[¶ 20.]   3.   Whether the trial court erred in failing to instruct the jury on the lesser included offense of second degree manslaughter.**

 [¶ 21.]   Andrews claims there was support for a second degree manslaughter instruction because the killing was committed in a reckless manner. The trial court refused to so instruct the jury because clearly, a deadly weapon had been used.

[¶ 22.]   The crime with which Andrews was charged and ultimately convicted is defined by SDCL 22–16–15(3): "Homicide is manslaughter in the first degree when perpetrated without a design to effect death, but by means of a dangerous weapon." Manslaughter in the second degree is defined as a reckless killing of another and explicitly excludes manslaughter in the first degree from its definition. SDCL 22–16–20. Andrews' argument on appeal completely ignores the shotgun, held 3 to 5 feet from Davis' head that blew a single hole into her skull, fracturing it and causing instantaneous death.

 [¶ 23.]   In order to instruct the jury on a lesser included offense, both a legal test and a factual test must be met. If one test is not satisfied, the other test need not be addressed. *State v. Black,* 506 N.W.2d 738, 744 (S.D.1993). The duty of the trial court to instruct is determined by the evidence. In order to meet the factual test, evidence must be presented that would support a conviction on the lesser charge. *Id.; State v. Gregg,* 405 N.W.2d 49, 51 (S.D.1987).

[¶ 24.]   Here, it is undisputed that death came for Davis via the shotgun, indisputably a dangerous weapon. *See State v. Heumiller,* 317 N.W.2d 126, 131 (S.D.1982) ("Judicial notice can be taken that at close range, a shotgun is a dangerous and deadly weapon."). Death by a dangerous weapon is specifically excluded from the definition of manslaughter in the second degree. The trial court did not err in refusing to instruct the jury on this lesser offense as the evidence did not support it.

[¶ 25.]   Affirmed.

[¶ 26.]   MILLER, C.J., SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.