2003 SD 71

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Samuel Wayne BOSTON, Defendant and Appellant.**

No. 22439.

Supreme Court of South Dakota.

Considered on Briefs April 28, 2003.

Decided June 11, 2003.

Lawrence E. Long, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Matthew T. Stephens, Rapid City, South Dakota, and LYnn A. Moran, Custer, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice.

[¶ 1.] Samuel Wayne Boston was convicted of second-degree felony murder on May 5, 2002. The trial court sentenced Boston to life in prison without parole for the murder of Richard Gitter. Boston appeals his conviction raising five issues. We affirm.

## FACTS

[¶ 2.] On March 17, 2001, Boston placed a 911 call requesting assistance because Gitter was unresponsive. When emergency personnel arrived at Boston's apartment, they found 45–year–old Gitter lying on his side in Boston's bathtub. Gitter was completely unclothed and not breathing. His clothing had been folded and placed on the edge of Boston's bed. Boston told officers that Gitter had arrived at the apartment earlier in the afternoon very inebriated and had passed out on Boston's couch. Boston told police that he disrobed Gitter and placed him in the tub. According to Boston, Gitter was unconscious but alive when Boston put him in the tub, but he later stopped breathing. Medical personnel determined that Gitter was dead. Gitter had a fresh laceration over his right eye and injuries similar to rug burns on both knees. Boston's explanation of how Gitter received the injuries changed with nearly every telling. The investigating officer felt that the circumstances of death were highly suspicious and designated the area a crime scene.

[¶ 3.] A subsequent search revealed blood-stained clothing belonging to both the victim and the Defendant, blood stains in various places throughout the apartment and blood stains on the inside and outside of the underwear worn by Defendant. The police found a rug and other laundry that Boston had washed that day prior to their arrival. Police also found a camera with film. The film contained several pictures of the unclothed victim lying in the bathtub. In some of the pictures, Defendant's shoes are visible because he is standing on the edge of the tub and shooting downward. In one of the pictures, Defendant's unclothed stomach is visible. All of the pictures focus on the victim's backside, with one focusing only on his buttocks. In a laundry room located outside of Boston's apartment, police found pornographic material focusing on female buttocks which Boston had torn, removed from his apartment and placed in a gar-

bage can prior to the arrival of the police. Police also found a videotape entitled "Butt Man."

[¶ 4.] The State's pathologist determined that the cause of death was manual strangulation and Boston was charged. At trial, Boston was convicted of second-degree felony murder, specifically, murder while engaged in or attempting sexual contact with a person incapable of consenting as defined in SDCL 22–22–7.2 in violation of SDCL 22–16–9. He appeals raising five issues:

1. Whether the trial court erred when it denied Defendant's motions for judgment of acquittal.

He claims the trial court abused its discretion when it:

2. allowed evidence regarding Defendant's sexual orientation;

3. denied Defendant's motion for a new trial based on alleged failure to disclose exculpatory evidence;

4. denied admission of Defendant's psychological and psychiatric history; and

5. denied Defendant's motion for a new trial based on prosecutorial misconduct and compromise verdict.

We affirm the trial court on all issues.

[¶ 5.] **1. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL.**

[¶ 6.] Boston argues that the trial court erred in denying his motions for judgment of acquittal. Our inquiry is whether the State set forward sufficient evidence from which the finder of fact could reasonably find the defendant guilty. *State v. Gonzalez*, 2001 SD 47, ¶ 7, 624 N.W.2d 836, 838. The question is "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the Court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." *Id.* (quoting *State v. Heftel*, 513 N.W.2d 397, 399 (S.D.1994)). This Court will not resolve conflicts in the evidence nor pass on the credibility of the witnesses. These functions are the exclusive province of the jury. *Heftel*, 513 N.W.2d at 399. "We afford the strongest presumption in favor of the jury's determination of credibility." *Id.* (*quoting State v. Arguello*, 502 N.W.2d 548, 552 (S.D.1993) (additional citations omitted)).

[¶ 7.] Boston argues that the State's circumstantial evidence was insufficient to support his conviction. Relying heavily on the testimony of his expert, Boston argues first that it is unlikely that the victim died by manual strangulation as the State's pathologist testified. Boston asserts that the cause of death was a combination of alcohol and drug poisoning because the victim had high levels of alcohol and Paxil in his system at death. However, the jury could have disregarded the expert's testimony because the Defendant's expert was discredited when it was revealed that he did not read the articles upon which he relied for this assertion. Further, the case studies upon which the expert relied had facts not in evidence in this case. For example, in one of the case studies, the victim died from drug and alcohol overdose but had two other drugs in addition to Paxil and alcohol in his system. Furthermore, it is the exclusive province of the jury to pass on the credibility of the witnesses, and the jury was free to accept or reject all or part of the testimony presented by the conflicting experts. *Belhassen v. John Morrell & Co.*, 2000 SD 82, ¶ 17, 613 N.W.2d 531, 537 (quoting *Kester v. Colonial Manor of Cus-*

*ter,* 1997 SD 127, 24, 571 N.W.2d 376, 380) (additional citation omitted).

[¶ 8.] Second, Boston argues that the evidence proves that it was physically impossible to carry out the crime for which he was convicted. Specifically, he argues that the victim was alive at the time he was placed in the bathtub. He asserts that therefore Boston had to strangle and have sexual contact with the victim while he was in the bathtub. However, this assertion rests on the assumption that the victim died while he was in the bathtub. Neither expert testified definitively that Gitter died in the bathtub. Rather, they testified that his injuries occurred while he was still alive.

[¶ 9.] The evidence at trial was sufficient to support the conviction. The State's expert testified that the victim died from manual strangulation. Boston argues that there were no external injuries on the victim to support the finding that the victim was strangled. However, the State's expert testified that external injuries usually occur when the victim is struggling. The evidence at trial, including the Defendant's own statements, indicated that Gitter was extremely inebriated and therefore would not have been struggling. Furthermore, the Defendant's expert conceded that the materials he relied upon indicate that when an adult is unconscious from extreme intoxication, strangulation could occur without external or internal neck injuries.

[¶ 10.] Boston next argues that there was no evidence of sexual contact to prove the underlying crime for the felony murder conviction. He argues first that the experts testified that there was no blood or semen found and that had there been semen it could not have simply been washed away. However, Boston's expert testified to the contrary stating that semen could be removed in such a way. Further-

more, Defendant's pictures show that he changed his own clothing at some point during his interaction with the victim. The pictures reveal his unclothed stomach and the fact that at the time he took the pictures, Boston was not wearing the bloody shoes police found later in his bedroom. The jury could also have inferred sexual contact based on Defendant's actions before he called the police. He removed pornographic material depicting women's buttocks from his apartment, washed the entrance rug, did some laundry, and changed his clothes. In other words, that he was attempting to conceal the crime. We have noted that concealment may be evidence of guilt or consciousness of guilt. *State v. Frazier,* 2001 SD 19, ¶ 41, 622 N.W.2d 246, 260. Furthermore, Defendant changed his story throughout the investigation, creating a reasonable inference that he was attempting to conceal the crime. Finally, the bizarre circumstances of this death could have led the jury to the reasonable conclusion that there was either an attempt or sexual contact. Specifically, the Defendant took off all of the victim's clothes, removed articles of his own clothing, placed the victim in the bathtub, admitted that he touched the victim's buttocks with his hands and took pictures of the naked victim focused primarily on his backside while he was either unconscious or dead. Based on the evidence presented by the State, the jury could have reasonably found either an attempt or sexual contact.

[¶ 11.] There is no showing that the trial court erred in denying Boston's motions for judgment of acquittal.

[¶ 12.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED EVIDENCE OF DEFENDANT'S SEXUAL ORIENTATION.**

[¶ 13.] Prior to trial, the State filed a motion to admit evidence of Boston's bisexuality at trial. The trial court granted the motion to the extent that the State was allowed to introduce Boston's statement to Agent John Walker of the DCI that Boston was bisexual and Boston's subsequent denial of that fact to Walker. The State was also allowed to introduce Walker's knowledge of the fact that Boston had committed homosexual acts. The transcript from the motion hearing at which the trial court decided this issue is not in the record nor is it listed in the index to the record. There is, however, a copy of the trial court's order granting the State's motion in part. The trial court allowed this evidence under SDCL 19–12–5, the crimes, wrongs and other acts statute, and as impeachment evidence related to Boston's credibility.

[¶ 14.] The trial courts evidentiary rulings are presumed to be correct. We review those rulings under an abuse of discretion standard. *State v. Goodroad,* 1997 SD 46, 9, 563 N.W.2d 126, 129 (*citing State v. Oster,* 495 N.W.2d 305, 309 (S.D. 1993)). Under this standard, the Defendant must demonstrate error and show that it was prejudicial error. *State ex rel. Dep't of Transp. v. Spiry,* 1996 SD 14, 11, 543 N.W.2d 260, 263 (quoting *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D. 1976)). The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion. *Goodroad,* 1997 SD 46, 9, 563 N.W.2d at 129 (*citing State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986)). Without the motion hearing transcript, and no showing of prejudice, the Defendant fails to show that the trial court abused its discretion in admitting this evidence.

[¶ 15.] At trial, no specific homosexual acts were introduced; the evidence was used to show that Boston had lied to the investigating officer in an attempt to conceal his guilt. Therefore, although one of the justifications for allowing the evidence was SDCL 19–12–5, at trial, the evidence was used solely to impeach Boston's statement to Walker that he was a heterosexual. The testimony at trial was as follows:

Q: (State's Attorney) Did you ask [Boston] what his sexual orientation was?

A: (Agent Walker) Yes, I did.

Q: And what did he say?

A: He said he was heterosexual.

Q: Was that different than information or something he had told you in a previous interview?

A: Yes, it was.

Q: What had he told you in a previous interview?

A: That he was bisexual.

Q: And what does that mean to you if somebody is bisexual?

A: A bisexual person will have sexual intercourse with both males and females. He doesn't have a particular preference one way or the other.

[¶ 16.] Boston argues that the motion hearing transcript makes it clear that the sole justification for allowing this evidence was that it was other acts evidence. We cannot say whether that is the case or not, but the judge's order with regard to this evidence clearly states the evidence is relevant and admissible both under SDCL 19–12–5 and as impeachment evidence. Because of the missing portion of the record, it is not possible for the Court to determine whether the trial court engaged in appropriate analysis and balancing to support admission of this evidence under the other acts statute. However, the evidence was admissible and was used to impeach Boston's statements to the officer.

Moreover, the Defendant failed to object to the above line of questioning at trial, and that constitutes waiver of the issue. *State v. Andrews*, 2001 SD 31, ¶ 19, 623 N.W.2d 78, 83; *See also State v. Corey*, 2001 SD 53, ¶ 9, 624 N.W.2d 841, 844. Finally, the Defendant's assertion that the trial court admitted the testimony as prior acts evidence is unsupported in the trial transcript wherein no limiting instruction is requested or given to the jury with regard to permissible use of such evidence. Because the Defendant fails to show that the trial court abused its discretion, we affirm the trial courts decision to admit this evidence.

[¶ 17.] **3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON ALLEGATIONS THAT EXCULPATORY EVIDENCE WAS NOT PRODUCED BEFORE TRIAL.**

[¶ 18.] Boston made a motion for a new trial based on his allegation that the State failed to disclose exculpatory evidence prior to trial and that information was intentionally withheld by Agent Walker and not disclosed until almost two weeks after the trial ended. Boston's first allegation is that prior to trial, Agent Walker interviewed Mark Bryan, a friend of the Defendant. Bryan told the agent that he had taken pictures of Boston when Boston was inebriated. Agent Walker had those pictures but the presence of the pictures was not disclosed to defense counsel and they were not mentioned in discovery. Boston's second allegation is that the State failed to disclose Agent Walker's interview

of Army public affairs officer McDowell.[1] McDowell informed Walker that paratrooper training did not include hand-to-hand combat but Boston would have been taught ligature[2] strangulation in infantry training. McDowell also noted that manual strangulation is not typically taught in infantry training.

■■ [¶ 19.] Boston argues that the pictures of Defendant taken by Bryan "[go] to the very heart of why the Defendant himself might take photographs of a person who was drunk and naked." We have held that in order to win a new trial based on after-discovered evidence, the defendant must show:

1) the evidence was undiscovered by the movant at the time of trial;

2) the evidence is material, not merely cumulative or impeaching;

3) that it would probably produce an acquittal; and

4) that no lack of diligence caused the movant to fail to discover the evidence earlier.

*State v. Gehm*, 1999 SD 82, ¶ 13, 600 N.W.2d 535, 540 (additional citations omitted). The court did not abuse its discretion in denying a new trial based on the withholding of this evidence. Boston has failed to show at least two of the four requirements. He argues on appeal that the fact that his friend took pictures of him while he was intoxicated explains why he would take pictures of Gitter while Gitter was intoxicated. However, the pictures taken of Boston when he was inebriated were taken while Boston was fully clothed, awake and presumably aware of what was

---

1. At one time, Boston was an Army paratrooper.

2. Ligature is defined as, "a cord wire, or bandage used for tying or binding." American Heritage College Dictionary, 784 (3d ed.

1997). Ligature strangulation is thus strangulation through use of a cord or rope or similar device as opposed to manual strangulation which occurs when one strangles another with their hands.

occurring. There is little similarity between these and the photos of the unclothed, unconscious Gitter, which focus primarily on his buttocks. Therefore, he cannot meet prong (4) because he was aware of the pictures and cannot meet prong (3) because he fails to show that this evidence would probably have produced an acquittal.

■■■ [¶ 20.] The trial court did not abuse its discretion in refusing to grant a new trial based on the interview of the army public affairs officer. Boston argues that at the time of trial, based on his interview with the public relations officer, Agent Walker knew that Boston did not possess the skill to effect the strangulation of the victim. Reading the report of the interview is enough to dispose of Boston's assertions that 1) the letter is exculpatory and 2) that it would have led to acquittal. The report states in part that McDowell, the army officer, told Walker that a person in paratrooper training would not receive any hand-to-hand combat training. However, the officer went on to explain that a portion of infantry training would include ligature strangulation training, but that

> it would be extremely difficult to locate any information or persons who might have trained Boston. McDowell stated that the number of persons going through the various types of training in the Army would be in the thousands [...] and that the programs would be constantly changing.

In short, the report merely reveals that Boston would have been trained in at least one choke-hold and it cannot be determined whether he learned others during his training. The letter certainly does not go so far as to say Boston did not know how to strangle a person manually, or that

it would be difficult or impossible for him to have done so. The vague nature of the report and its failure to comment on anything specific to Boston makes its exculpatory value minimal at best. Boston has also failed to show that introduction of the report at trial would probably have led to acquittal. Finally, if anyone was aware of the extent of Boston's military training, it was Boston himself. Had that information been exculpatory, Boston could have presented it. The trial court is affirmed on this issue.

[¶ 21.] **4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED ADMISSION OF DEFENDANT'S PSYCHIATRIC RECORDS.**

[¶ 22.] Boston argues that the trial court abused its discretion in granting the State's motion in limine to prohibit introduction of Boston's psychiatric and psychological history, disorders and diagnoses. He asserts that it was necessary to explain his paranoid schizophrenia in order to counter the State's attempt to portray him as a military paratrooper with special skills. Boston argues vaguely that he may have called one or more of the psychiatrists who treated him at the Veteran's Administration medical center so that they could verify that he was docile and nonviolent. He also argues that either the medical record-keeper who testified at trial or his apartment manager could have testified to his disabilities. The Defendant asserts that this information could have explained why he disrobed the victim before placing him in the tub and why he folded the victim's clothes and placed them on the bed.[3] However, no offer of proof was made by Defendant on any of these matters.

---

**3.** Defendant argues on appeal that he has obsessive compulsive disorder. This argument was never made before the trial court

and is thus waived. *Andrews,* 2001 SD 31, ¶ 19, 623 N.W.2d at 83.

[¶ 23.] As the trial court noted, the Defendant failed to "specify what diagnosis or evidence [he] would intend to offer, or through which witness [he] would intend to offer such evidence[.]" Furthermore, the trial court found that the Defendant's mental history would be "irrelevant, misleading and confusing to the jury" because the Defendant had already withdrawn his insanity plea and he was not arguing that mental illness prevented him from forming the requisite intent. The Defendant made no showing before the trial court or this Court of the relevance of the proffered evidence. There is no showing that the trial court abused its discretion in granting the motion to preclude this evidence.

[¶ 24.] **5. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT AND COMPROMISE VERDICT.**

[¶ 25.] Defendant argues that the trial court abused its discretion in denying his first motion for a new trial. He asserts initially that the State improperly addressed an individual juror during closing arguments. The record reflects that during jury voir dire, the State asked the potential jurors to raise their hands if they had children. The prosecutor then had a discussion with one of those jurors in which she described the meaning of reasonable doubt with an analogy to a child caught standing before a broken cookie jar with crumbs on his face. The prosecutor then addressed the jury as a whole stating,

that's kind of the point that I'm making that sometimes I think people get mistakenly led to believe that the State's burden of proof in a case is that if there is any other possible explanation for this, then we have to acquit and that's not what the law is. It has to be a reasonable doubt. And when you figure that out, what you're asked to do is to bring your every day life experiences like dealing with our children and having to listen to different sides of the story and how do you figure that out? You use your common sense and you think about things you've heard before and that's what we're asking you to do. Will everyone agree and promise me that you'll use your common sense and apply your everyday life experiences like that into the courtroom when you're judging the evidence in this case? A show of hands who will agree to do that?

In closing argument, the State argued,

[a]nd you remember when we were doing jury selection and I talked to you, I gave that example to you about how you try to sort out the truth in your everyday lives and we use the analogy with your children and the cookie jar dropping and breaking in the kitchen. How you come in later and you find the cookie jar broken with the cookies on the floor and you go find your son and he had got cookie crumbs on his face and chocolate on his fingers and you make a reasonable inference that he did it and he starts—what does he do initially, he denies it. I didn't do it. Here's how it must have happened. That's what we have got in this case ... And it's the same thing with the children example we talked about, could the wind have blown through the window and knocked that cookie jar off the shelf? Well, possibly. But, you know, that doesn't account for the cookie crumbs and the chocolate on your son's face. And who got caught with the cookie crumbs and chocolate all over their face in this case is Sam Boston[.]

[¶ 26.] The Defendant makes the unsupported claim that the prosecutor sin-

gled out one juror. However, he did not object to the alleged misconduct during closing arguments. Having failed to give the trial court the opportunity to rule on this issue by objecting at the time, Defendant has waived this argument on appeal. *Corey*, 2001 SD 53, ¶ 9, 624 N.W.2d at 844.

[¶ 27.] Next, Boston claims that the State "produced emotional manifestations of the victim's family with the showing of Christmas photographs of the decedent[.]"[4] The only authority cited by Boston in support of this argument discusses emotional outbursts during a trial. See *Jay M. Zitter, JD, Annotation, Emotional Manifestations by Victim or Family of Victim During Criminal Trial as Ground for Reversal, New Trial, or Mistrial, 31 A.L.R.4th 229 (1984)*. This authority is not on point and does not support Boston's assertion that showing the pictures was prejudicial and warranted a new trial. At the time the pictures were shown at trial, Defense counsel made no objection and thus failed to preserve the issue for appeal. Failure to cite relevant authority in support of his position and failure to object at trial constitute waiver of this issue. *Andrews*, 2001 SD 31, ¶ 19, 623 N.W.2d at 83; *State v. Phillips*, 489 N.W.2d 613, 616 (S.D.1992) (stating, "[f]ailure to cite authority violates SDCL 15–26A–60(6) and constitutes a waiver of that issue") (additional citation omitted).

[¶ 28.] Boston's final argument is that a note sent by the jury to the judge was evidence of a compromise verdict. The note was signed by five jurors and sent to the judge at the same time the jury announced it had reached its verdict. The note stated:

In the case of Samuel Boston, 5/3/02:

We the Members of the Jury are very disappointed with [the way-crossed out] the State's Evidence. The Lack of gathering evidence and the evidence gathered. Very Shabby Work on the State's part.

This note alone is insufficient to establish there was a compromise verdict, particularly considering that the jury was polled and each juror affirmed the verdict. The Defendant did not inquire any further at the trial court level and thus established no record to determine whether the polled jurors were being untruthful. Defendant has not shown that the trial court abused its discretion in denying his motion for a new trial.

[¶ 29.] The trial court is affirmed.

[¶ 30.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

**4.** The Defendant also argues that the photographs were not in the photo log of the photos intended to be offered by the State. This assertion is not supported as the record indicates they were designated by the State.