2004 SD 68

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Carlos MESA, Defendant
and Appellant.**

No. 22798.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided May 19, 2004.

Lawrence E. Long, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, South Dakota Attorneys for plaintiff and appellee.

Rick L. Ramstad of Wilka and Ramstad, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice.

[¶ 1.] Carlos Mesa was convicted by a jury of second degree rape in violation of SDCL 22–22–1(3) and second degree burglary, in violation of SDCL 22–32–3. Mesa appeals, alleging 1) the trial court constructively amended the indictment; and 2) the evidence was insufficient to sustain a conviction for second degree rape. We affirm.

## FACTS

[¶ 2.] On August 2, 2002, BB, the twenty-two year old victim, went out for the evening with friends. At approximately midnight, she and her friends went to a bar, where she consumed one beer. Next, the group went to another bar, where she had a glass and a half of beer. She left the second bar around two in the morning and drove to her boyfriend's home. Her boyfriend had been drinking and smoking marijuana most of the evening. Around 3:30 a.m. the victim and her boyfriend went into his bedroom and "fooled around." They did not engage in intercourse because he was "incredibly drunk" and passed out while kissing her neck. BB testified that shortly after he passed out, she fell asleep.

[¶ 3.] The victim testified that she awoke at approximately 6:30 a.m. at the foot of the bed with Defendant raping her. She testified that she struggled with him and attempted to push him away by pushing against his chest with her left foot. After a struggle, Defendant left the bedroom. BB tried to awaken her boyfriend but he did not respond to her calling his name or pinching him. BB then followed Defendant into the living room and tried to get him out of the house. Defendant grabbed her wrist, tried to kiss her and pulled her onto the couch. BB freed herself from him and tried to talk to Defendant but found that he spoke only Spanish. BB ran to her boyfriend's room and attempted unsuccessfully to wake him again. Fearing that the Defendant would get away and that she would "never be able to track him down," she went back to the living room to discover he was gone. BB grabbed a phone and dialed 911. She opened the back door of the home and saw Defendant walking away with a green towel wrapped around his waist. She took the

portable phone and followed Defendant as he walked down the street. Mesa walked to a nearby staircase and stood there. He remained there while BB yelled and made obscene gestures at him until police arrived.

[¶ 4.] One of the responding officers testified that when she arrived, she found BB yelling "he raped me" and pointing to Mesa. The officer noted that BB stated she had been drinking and that "she was intoxicated and that she wished she was sober right now." The officer also testified that she had difficulty waking up all three men in the house where the victim had been assaulted. Finally, she testified that BB's boyfriend called a day later because he found a shirt and a pair of shorts with a set of Nissan car keys in the pocket on the floor of his bedroom. A second officer testified that Mesa owned a Nissan.

[¶ 5.] An officer on the scene testified that Mesa appeared to be intoxicated and he was locked out of his apartment. After the officers realized that Mesa did not speak English, a Spanish-speaking officer was called to the scene. When he arrived, he spoke with Mesa, who denied any contact with BB and denied being in the boyfriend's home that evening. Later, in an interview with another officer, Mesa admitted he was inside the boyfriend's home, and that he and BB had sex, but he insisted that the sex was consensual.

[¶ 6.] A physical examination of the victim revealed a red bruise on her upper left arm, a large bruise on her left thigh and vaginal abrasions. The examining physician testified that the vaginal abrasions were consistent with forcible intercourse. The doctor noted that the victim did not appear to be intoxicated though she reported she had been drinking. At trial, the State's forensic expert testified that she detected sperm cells on the victim's vaginal and cervical swabs, but no seminal fluid. The expert was unable to identify from whom the sperm cells originated.

[¶ 7.] On August 5, 2003, the State filed a Complaint charging Mesa with second degree rape in violation of SDCL 22–22–1(2). Thereafter, a grand jury returned an Indictment which charged Defendant with Second Degree Rape under SDCL 22–22–1(2) and in the alternative, Second Degree Rape under SDCL 22–22–1(3). He was also charged with Second Degree Burglary under SDCL 22–32–3. Mesa pleaded not guilty and proceeded to a jury trial. At the close of State's case, Mesa moved for judgment of acquittal and the trial court denied the motion.

[¶ 8.] During deliberations, the jury sent the trial court a note which inquired, "[d]oes alcohol impairment constitute mental incapacity?" Without objection from the defense, the judge sent a note to the jury stating, "[i]n response to your question, such condition could be so caused, but that is a factual issue that you will have to determine in arriving at your verdict." Defendant was convicted of Second Degree Burglary and Second Degree Rape under SDCL 22–22–1(3). He was acquitted of the forcible rape charge. Mesa appeals, raising two issues:

1. Whether the trial court's response to the jury's question constituted a constructive amendment of the indictment.

2. Whether there was sufficient evidence to support the conviction of Second Degree Rape.

We affirm.

## STANDARD OF REVIEW

[¶ 9.] We review claims of constitutional violation under the de novo standard of review. *State v. Ball,* 2004 SD 9, ¶ 19, 675 N.W.2d 192, 198. In reviewing

a claim of insufficiency of the evidence, the question is:

> whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the Court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict.

*State v. Boston,* 2003 SD 71, 6, 665 N.W.2d 100, 103 (quoting *State v. Heftel,* 513 N.W.2d 397, 399 (S.D.1994)) (additional citations omitted). "We afford the strongest presumption in favor of the jurys determination of credibility." *Id.*

**[¶ 10.] 1. WHETHER THE TRIAL COURT'S RESPONSE TO THE JURY'S QUESTION CONSTITUTED A CONSTRUCTIVE AMENDMENT OF THE INDICTMENT.**

[¶ 11.] South Dakota's rape statute provides in part:

> Rape is an act of sexual penetration accomplished with any person under any of the following circumstances . . .
>
> (2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
>
> (3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or . . .

SDCL 22–22–1. Defendant was charged under subsection (2), and in the alternative, subsection (3). The jury was instructed on subsection (2) and, in the alternative, subsection (3). There were no objections to these instructions.

[¶ 12.] As indicated in ¶ 8, the jury's note inquired, "[d]oes alcohol impairment constitute mental incapacity?" Without objection from the defense, the judge sent a note to the jury stating, "[i]n response to

your question, such condition could be so caused, but that is a factual issue that you will have to determine in arriving at your verdict."

[¶ 13.] Defendant was convicted of Second Degree Rape under SDCL 22–22–1(3). He argues for the first time on appeal that the trial court's answer to the jury's question was a constructive amendment of the indictment so that he was actually convicted under subsection (4). A constructive amendment to an indictment occurs when:

> the terms of the indictment are altered in effect by either the admission of evidence or the use of jury instructions which modify the essential elements of the offense charged so that a substantial likelihood exists that the defendant was convicted of an offense other than that charged in the indictment.

*United States v. Johnson,* 934 F.2d 936 (8th Cir.1991) (citing *Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960)).

[¶ 14.] Subsection (4) of the rape statute provides:

> Rape is an act of sexual penetration accomplished with any person under any of the following circumstances . . .
>
> (4) if the victim is incapable of giving consent because of any intoxicating, narcotic, or anesthetic agent or hypnosis[.]

However, the trial court did not instruct the jury on the language of subsection (4).

[¶ 15.] Mesa did not object to the court's answer at the time it was given. Failure to raise an issue before the trial court can constitute waiver of the issue. *See e.g. Boston,* 2003 SD 71 at ¶ 26, 665 N.W.2d at 108–109 (additional citation omitted). Moreover, "failure of a court to correctly or fully instruct the jury is [generally] not reviewable unless an objection

was made or written instruction correctly stating the law was requested." *State v. Otto,* 529 N.W.2d 193, 195 (S.D.1995) (additional citation omitted). Mesa has waived this issue on appeal.

■ [¶ 16.] Even if we reached the merits of this issue, it does not change the result because we are satisfied that the trial court's answer to the jury's question did not constitute a constructive amendment of the indictment.

1) No instruction was ever given on subsection (4).

2) Subsection (3), which was instructed upon, is broad enough to include physical or mental incapacity to consent, without regard to cause.

3) The trial court simply stated that "such condition could be so caused, but that is a factual issue that you will have to determine in arriving at your verdict."

4) This is proper guidance to the jury based on a correct statement of the law, and we find no error.

As indicated, Defendant was convicted of rape under subsection (3) and we affirm subject to Issue 2.

[¶ 17.] **2. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION OF SECOND DEGREE RAPE.**

■ [¶ 18.] Mesa asserts that the jury "clearly rejected [BB's] claim that she had been sleeping when she first encountered Mesa." He claims this assertion is supported by the note the jury sent to the court and that the instruction allowed the jury to convict him of having sex with a person who was incapable of consenting due to intoxication. The success of this argument depends on whether the Court

accepts the argument that the jury convicted Mesa of rape on the basis that BB could not consent due to intoxication. Specifically, Mesa asserts under this issue that there is insufficient evidence on the record to support the finding that BB was too intoxicated to consent to sex.* This argument is without merit. There is nothing to indicate that the jury convicted Mesa based on BB's level of intoxication. In order for the Court to grant relief on the basis of this argument, the Court would have to presume to know that the jury convicted him based on her level of intoxication. We cannot engage in such supposition. Particularly given that there was sufficient evidence in the record to support the jury's verdict.

■ [¶ 19.] Next Mesa asserts that the victim's testimony was too incredible to believe. He contends that he did not act like a rapist, and she did not act like a victim. Based on its verdict, it is clear that the jury believed the victim's testimony that she was raped. Mesa asks the Court to re-weigh the credibility of the witnesses and the weight of the evidence presented to the trier of fact. However, it is a function of the jury to resolve factual conflicts and weigh the credibility of witnesses. *State v. Moran,* 2003 SD 14, ¶ 36, 657 N.W.2d 319, 328 (additional citation omitted). As unusual as the victim's testimony may seem, Mesa's assertions were even more incredible. His testimony was that he left his apartment to take some garbage out. In his hand he carried an open beer. He asserts that BB came out of her boyfriend's house, approached him, and requested a drink of the beer. He then testified that they shared the beer, and began kissing. He contended that BB

---

* As the State points out, Defendant tends to undercut his argument under Issue 1 by asserting that "the collective experience of mankind with alcohol and common sense" effectively rebuts any indication that BB was too intoxicated to consent to sex.

led him inside and into her boyfriend's bed and they engaged in consensual sex while her boyfriend slept inches away. Supposedly, this was all done without any real verbal communication because of the language barrier between BB and Mesa. Defendant's veracity could easily be doubted by the jury given that despite his later tale of consensual sex, he initially denied any contact with BB.

[¶ 20.] As stated in ¶ 16, subsection (2), the jury instruction supporting subsection (3) was broad enough to include physical or mental incapacity to consent, without regard to cause. In other words, the jury could determine that the victim was sleeping at the time she was raped. There was sufficient evidence on the record, when coupled with inferences favorably drawn in support of the verdict, to support the conviction.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.