#24077, #24088-a-RWS

**2007 SD 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

  v.

NATHANIEL CRAWFORD,                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOSEPH NEILES
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

SHERRI SUNDEM WALD
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                         and appellee.


JOHN R. HINRICHS
Office of the Minnehaha
County Public Defender
Sioux Falls, South Dakota                Attorneys for defendant
                                         and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2007

OPINION FILED **02/28/07**

SABERS, Justice

[¶1.]        Nathaniel Crawford (Crawford) was found guilty by a jury of aiding and abetting distribution of a controlled substance. He was acquitted on possession of a controlled substance. After the trial court sentenced him to eight years in the penitentiary, he appealed. We affirm.

## FACTS

[¶2.]        In 2004, there was a concerted effort by local law enforcement officers and Division of Criminal Investigation (DCI) agents to stop drug activity in southeastern South Dakota. This case derives from an investigation of drug activity in and around Yankton, SD.

[¶3.]        DCI was using a confidential informant named Robert Jarmon (Jarmon). On March 22 and 23, 2004, the officers observed a woman named "Angel" sell marijuana to Jarmon during two preplanned, controlled buys. During these two "buys," a man named Nate Steele (Steele) was with Angel.

[¶4.]        A week later, Jarmon arranged to buy marijuana and methamphetamine from Angel. Law enforcement officers observed Angel and a man, subsequently identified as Marco Antonio Garcia (Garcia), arrive in a four-door Buick and sell the drugs to Jarmon. After running the license plates, the officers discovered the Buick belonged to Crawford and his girlfriend, Tina Lovaas.

[¶5.]        Officers showed Jarmon a photograph of Crawford's driver's license and Jarmon incorrectly identified Crawford as the man with Angel during the latest buy. The officers did not know who Angel was, but suspected Angeline Crissey

(Crissey). Officers showed Jarmon a photo of Crissey and he incorrectly identified Crissey as the woman from whom he bought drugs.

[¶6.] Officers interviewed Steele, who was with Angel on the two initial buys. Steele initially denied he knew Angel's last name. After subsequent investigation revealed he was involved with Angel, he confessed that her real name was Nina Angelina Augusta Huff (Angel).

[¶7.] At the time, Angel was on probation for theft of government funds. She was living in a halfway house after she suffered a relapse while on probation.[1] Angel's probation officer, Mareen Jensen, arranged a meeting between Huff and officers investigating the drug sales with Jarmon.

[¶8.] During that interview, Angel admitted she and Garcia sold drugs to Jarmon. She also told officers that she and Garcia were short of drugs to sell Jarmon and Crawford supplied some methamphetamine for them to sell. Angel alleged Crawford let her and Garcia borrow his Buick to travel from Sioux Falls to Yankton to sell the drugs.

[¶9.] Based on this information, Crawford was arrested. He was indicted on one count of aiding and abetting distribution of a controlled substance (methamphetamine) and one count of possession of a controlled substance (methamphetamine). A habitual offender information was also filed.

[¶10.] During trial, Crawford called Garcia to testify on his behalf. Garcia exercised his Fifth Amendment privilege against self-incrimination and refused to

---

1. Angel testified she had gone out with friends to drink and smoke pot. She informed her probation officer who put her in the halfway house.

answer any questions regarding the Yankton drug investigation or Crawford's alleged involvement in the case. Crawford then sought to introduce Garcia's statements made during a phone interview with Mary Baker, a paralegal working for Crawford's counsel, through exceptions to the hearsay rule, SDCL 19-16-32 (Rule 804(b)(3)) and SDCL 19-16-35 (Rule 804(b)(6)). The circuit court found Garcia was unavailable and in the interest of justice he allowed Baker to testify to some, but not all of Garcia's prior statements.

[¶11.] After closing arguments, Crawford made an oral motion for a mistrial. He alleged the State engaged in prosecutorial misconduct and its comments during closing and rebuttal "exceed[ed] the evidence that had been presented. . . ." The trial court found that "there were no errors made during the closing arguments that would rise to a level that would cause the [c]ourt to declare a mistrial" and denied the motion.

[¶12.] The jury convicted Crawford of one count of aiding and abetting distribution of a controlled substance, but acquitted him of one count of possession of a controlled substance. After the verdict, Crawford pleaded guilty to being a habitual offender. The trial judge sentenced him to eight years in the penitentiary. Crawford appeals and raises the following issues:

1. Whether the trial court violated Crawford's right to compulsory process by excluding some of Garcia's out of court statements.

2. Whether the State committed prosecutorial misconduct during closing argument and the trial court erred in denying Crawford's motion for a mistrial.

## STANDARD OF REVIEW

[¶13.]       "The trial court's evidentiary rulings are presumed to be correct." State v. Boston, 2003 SD 71, ¶14, 665 NW2d 100, 105.  We review evidentiary rulings for abuse of discretion.  *Id.* (citing State v. Goodroad, 1997 SD 46, ¶9, 563 NW2d 126, 129) (additional citations omitted).  The defendant must first demonstrate error and then show that error was prejudicial.  *Id.*  (citing State ex rel. Dep't of Transp. v. Spiry, 1996 SD 14, ¶11, 543 NW2d 260, 263) (quoting Shaffer v. Honeywell, Inc., 249 NW2d 251, 258) (SD 1976)).  The test for abuse of discretion is "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion."  Huber v. Dep't of Pub. Safety, 2006 SD 96, ¶22, 724 NW2d 175, 180 (additional citation omitted).

[¶14.]       The trial court has the discretion to determine whether a motion for a new trial should be granted.  State v. Perovich, 2001 SD 96, ¶11, 632 NW2d 12, 15 (additional citations omitted).  This Court will not disturb a trial court's denial of a mistrial unless there is a clear showing of abuse of discretion.  *Id.*

[¶15.]       **1.    Whether the trial court violated Crawford's right to compulsory process by excluding some of Garcia's out of court statements.**

[¶16.]       The right of compulsory process is guaranteed by the Sixth Amendment to the United States Constitution.  The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor. . . ."  The South

Dakota Constitution guarantees the same right in Article VI, section 7.[2]  Crawford argues that the trial court violated his right of compulsory process by prohibiting Baker from testifying to some of Garcia's out of court statements.  However, no right is limitless, and it "may . . . bow to accommodate other legitimate interests in the criminal trial process."  *Chambers v. Mississippi*, 410 US 284, 295, 93 SCt 1038, 1046, 35 LEd2d 297 (1973) (additional citation omitted).  *See also* State v. Dale, 439 NW2d 98, 104 (SD 1989).  Almost one hundred years ago, this Court recognized that "[a defendant] is entitled, *under reasonable regulations*, to process for witnesses. . . ."  State v. Wilcox, 21 SD 532, 114 NW 687 (1908) (emphasis added).

[¶17.]          Crawford cites *Washington v. Texas* in support of his argument that his right to compulsory process was violated.  388 US 14, 23, 87 SCt 1920, 1925, 18 LE2d 1019 (1967).  In *Washington*, the United States Supreme Court decided the defendant's right to compulsory process was denied because the *State* arbitrarily denied him the right to have a witness testify who had relevant and material testimony.  *Id.  See* United States v. Valenzuela-Bernal, 458 US 858, 872-73, 102 SCt 3440, 3449-50, 73 LE2d 1193 (1982) (the *government* may not deport witnesses who have material and relevant testimony); Fountaine v. State, 460 So2d 553, 555 (FlaDistCtApp2d 1984) (recognizing the right to compulsory process only requires that the *government* may not prevent an otherwise willing defense witness from testifying), *petition for review denied*, 464 So2d 554 (Fla 1985).

---

2.      The South Dakota Constitution provides, in relevant part, "In all criminal prosecutions the accused shall have the right . . . to have compulsory process served for obtaining witnesses in his behalf . . . ."  Art. VI, § 7.

[¶18.]      This case is distinguishable from *Washington*.[3]  In this case, the State did not prevent the defendant from calling the witness.  Indeed, Crawford did call Garcia to the stand.  Garcia chose to exercise his Fifth Amendment privilege against self-incrimination.  Crawford's "right to compulsory process does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self incrimination."  *See* United States v. Robaina, 39 F3d 858, 862 (8thCir 1994) (citing Kastigar v. United States, 406 US 441, 444, 92 SCt 1653, 1656, 32 LE2d 212 (1972)).

[¶19.]      The Fifth Circuit has held that a defendant's right to compulsory process is fulfilled when the witness is physically present in court.  United States v. Griffin, 66 F3d 68, 70 (5thCir 1995) (citing United States v. Lacouture, 495 F2d 1237, 1240 (5thCir 1974), *cert denied*, 419 US 1053, 95 SCt 631, 42 LEd2d 648 (1974)).  The court explained,

> The Sixth Amendment requires that a witness be brought to court, but it does not require that he take the stand after refusing to testify.  Once a witness appears in court and refuses to testify, a defendant's compulsory process rights are exhausted.  It is irrelevant whether the witness's refusal is grounded in a valid Fifth Amendment privilege, an invalid privilege, or something else entirely.  The defendants' Sixth Amendment rights were satisfied as soon as the [witness] appeared in court and refused to testify . . . .

---

3.      Crawford also argues our decision in *State v. Dale* demonstrates his right to compulsory process was violated.  439 NW2d 98 (SD 1989).  There, the court refused to subpoena some of Dale's witnesses and we affirmed because the witnesses did not have material and favorable testimony for the defense.  *Id.* at 104-05.  This case is also distinguishable from *Dale* because neither the State nor the circuit court prevented any of Crawford's witnesses from testifying.

*Id.*, 66 F3d at 70[4] (internal citations omitted). In this case, Crawford's right to compulsory process was fulfilled when the circuit court issued a subpoena for Garcia and Garcia was physically available in the courtroom. The fact that Garcia invoked his Fifth Amendment right does not violate Crawford's right to compulsory process. "[A]n accused's right to compulsory process must give way to the witness' Fifth Amendment privilege. . . ." United States v. Follin, 979 F2d 369, 374 (5thCir 1992) (quoting United States v. Boyett, 923 F2d 378, 379 (5thCir), *cert denied*, 502 US 809, 112 SCt 53, 116 LEd2d 30 (1991). *See* State v. Montgomery, 467 So2d 387, 392 n6 (FlaDistCtApp3d 1985).

[¶20.]	Finally, the fact that the trial court excluded some of the statements because they did not fall within an exception does not create a compulsory process violation. As previously stated, the right to compulsory process is not absolute. "A defendant 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability. . . .'" Hawkins v. Costello, 460 F3d 238, 243 (2dCir 2006) (quoting *Chambers*, 410 US at 302, 93 SCt at 1049, 35 LEd2d 297). Crawford "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *See id.* (quoting Taylor v. Illinois, 484 US 400, 410, 108 SCt 646, 98 LEd2d 798 (1988)). *See also Wilcox*, 21 SD at 534-36, 114 NW at 688 (finding a defendant had the right to

---

4.	Several other jurisdictions have held the same way. *See also* United States v. Gloria, 494 F2d 478, 480 (5thCir 1974), *cert denied*, 419 US 995, 95 SCt 306, 42 LEd2d 267 (1974); United States v. Johnson, 488 F2d 1206, 1211 (1stCir 1973); United States v. Beye, 445 F2d 1037, 1038 (9thCir 1971); Bowles v. United States, 439 F2d 536, 541-42 (DCCir 1970) (en banc), *cert denied*, 401 US 995, 91 SCt 1240, 28 LEd2d 533 (1971).

process subject to reasonable regulations).[5] In order for Crawford to get the statements admitted, he must demonstrate the trial court abused its discretion in excluding the statements and the error prejudiced him. *See Boston*, 2003 SD 71, ¶14, 665 NW2d at 105 (additional citations omitted).

[¶21.] Crawford attempts to cast his argument as a constitutional violation in order to obtain a de novo review of the trial court's evidentiary decision. However, there was not a compulsory process violation. Therefore, the standard of review for the evidentiary issue is abuse of discretion. *See id.*

[¶22.] We have considered the evidentiary and remaining issues and find them to be without merit. Therefore, we affirm.

[¶23.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

5. Crawford interprets "reasonable regulation" to mean the rules of evidence can be used to procure testimony of an unavailable declarant in order to protect his right to compulsory process. This is incorrect for two reasons. First, as illustrated above, the right to compulsory process ends upon compelling the witness to be physically available in the court and the rules of evidence are not a mechanism that fulfills the right to compulsory process. Second, the rules of evidence are not "reasonable regulations" within the meaning of *Wilcox*. We interpret "under reasonable regulation" to mean the right of compulsory process is *subject* to reasonable regulations. For example, if the witness is out of state and not subject to the state's subpoena power (as was the case in *Wilcox*) then the defendant's right to compulsory process is restricted under the reasonable regulation of the state's subpoena power. *Wilcox*, 21 SD at 534-36, 114 NW at 688 ("State process cannot operate beyond state boundaries. So the absolute right under discussion does not exist with respect to a witness whose attendance cannot be compelled").