2004 SD 50

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jamie Benjamin WRIGHT, Defendant and Appellant.**

No. 22686.

Supreme Court of South Dakota.

Argued on Jan. 13, 2004.

Decided April 14, 2004.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

John R. Hinrichs, Assistant Minnehaha County Public Defender, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Jamie Wright challenges his conviction of four counts of sexual contact with a minor under SDCL 19–16–38 claiming his confession to law enforcement was involuntary.

## FACTS

[¶ 2.] The Wright's three minor children C.G., D.G., and A.G. were taken into custody by the Department of Social Services (DSS), when the two year old wandered from their home. DSS intended to return the children as soon as the Wrights met DSS requests. The Wrights cooperated and the children were to be returned. The return was stalled when the six year old, C.G., who was Jamie Wright's stepdaughter, became upset about going home. In a written note, C.G. said she did not want to return home because her stepfather touched her private areas. Child's Voice [1] conducted a forensic interview with C.G. During the interview, C.G. repeated that Wright touched her privates. A medical exam of C.G. was performed but no physical evidence of sexual abuse was revealed.

[¶ 3.] While C.G. was being interviewed, the Wrights were waiting at DSS believing the children were being returned to them. They had waited over four hours. Detective Blaine Larsen from the Sioux Falls Police Department, who observed the interview with C.G., approached the Wrights at DSS. He told them that he would explain the delay at the police station. He transported the Wrights to the station. Larsen placed Mr. Wright in an interview room and had Mrs. Wright wait in the hall. Larsen initially asked Wright various questions about his identity.

[¶ 4.] Larsen then discussed the background of the events that led to the children being removed from the home. He then confronted Wright with C.G.'s accusations. After some discussion, Wright admitted sexual contact happened twice. Larsen got the details about the two admitted occurrences. Larsen pushed Wright further about the number of occurrences. Wright eventually admitted to four occurrences. Wright refused to make a written statement. Wright was subsequently charged with and convicted of four counts of sexual contact with C.G.

## ISSUE

Whether Wright's confession was involuntary thereby violating his constitutional rights against self-incrimination.

## STANDARD OF REVIEW

[¶ 5.] The voluntariness of a confession is a legal question, reviewed de novo. *State v. Tuttle*, 2002 SD 94, ¶ 20, 650 N.W.2d 20, 30. Deference is given, however, to related questions of fact. *Id.* This Court "examine[s] the entire record and make[s] an independent determination of the ultimate issue of voluntariness." *Id.* (citations omitted).

1. "Child's Voice is an outpatient evaluation center for children who have possibly been physically and/or sexually abused. The Child's Voice team of specialists provides comprehensive medical services, including a forensic interview, upon referral from child protection and law enforcement agencies. This team is trained in the medical assessment and treatment of physically and sexually abused children." (quoted from official website, available at http://www.siouxvalley.org/Childrens/AbuseNeglect/ ChildsVoice.cfm).

## DECISION

[¶ 6.] Because this case occurred before our decision in *Tuttle,* the State's burden of proof to show that the confession was voluntary is beyond a reasonable doubt.[2] In analyzing whether a confession was voluntary, "[t]he factual inquiry centers on (1) the conduct of law enforcement officials in creating pressure and (2) the suspect's capacity to resist that pressure." *Id.* at 22. When evaluating a suspect's capacity to resist pressure, we consider the totality of the circumstances including:

> the defendant's age; level of education and intelligence; the presence or absence of any advice to the defendant on constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; the use of psychological pressure or physical punishment, such as deprivation of food or sleep; and the defendant's prior experience with law enforcement officers and the courts.

*Id.* Further, while law enforcement interrogation may utilize psychological tactics, the trial court may consider law enforcement's deceptions and misrepresentations in its determination of the voluntariness of admissions. *Id.*

[¶ 7.] We first consider the conduct of law enforcement. Wright argues that his "confession" was obtained by manipulative and coercive interrogation tactics making it involuntary. Specifically he states that he repeatedly denied the accusations and only confessed because Larsen assured him that his cooperation would get the children returned faster. He claims this caused enormous pressure causing his will to be overborne. Wright cites *State v. Stanga,* 2000 SD 129, 617 N.W.2d 486, for the proposition that while some interrogation tactics are legitimate, law enforcement "must conduct the interview without the undue pressure that amounts to coercion and without the dishonesty and trickery that amounts to false promise." *Id.* at ¶ 16. He states that Larsen's assurances that the children would be returned if he cooperated, while not an "outright deception" was nevertheless "a fairly attractive carrot dangled in front of a very vulnerable individual." Further, Wright claims that Larsen had no authority to influence the decision to return the children. Consequently, Larsen made a promise that he had no authority to honor. In *State v. Owens,* 2002 SD 42, 643 N.W.2d 735, we stated "deception by the police is not sufficient to make an otherwise valid confession inadmissible unless it appears that the deception produced a coerced or involuntary confession." *Id.* at ¶ 53.

[¶ 8.] Second, we consider the Defendant's capacity to resist the pressure created by law enforcement under the totality of the circumstances. Wright was twenty years of age at the time of his confession. The record does not indicate Wright's educational background. Wright was not advised of any constitutional rights.[3] However, the record does show that Wright had prior experience with law enforcement. He also tells the detective that he had previously been before a judge on criminal charges. Larsen did not use repeated or prolonged questioning during the fifty-minute interrogation. Wright was not deprived of sleep or food nor

---

2. The burden of proof was changed to a preponderance of the evidence in *Tuttle.*

3. Wright did not receive Miranda rights at the time of his confession. If the interrogation was custodial, Miranda rights were required. Appellate counsel waived the issue of custodial interrogation at oral argument.

isolated from family or friends for a long period of time.

[¶ 9.] Additionally, in reviewing the taped interview, this Court was able to observe the demeanor of both the detective and Wright. The detective's questions were direct. His tone remained calm but persistent. Wright denied the incidents several times. It was obvious that Wright was concerned about the children being returned to his wife. He asked, "Can I get the kids back if I go along with this? That's what I want to know." The detective told Wright that the mother will get the children back but that he would have to be out of the home. The detective said, "[W]e know this happened. Step one to getting the kids back—you have to admit you have a problem and step two is—how are we going to fix that problem so it doesn't happen again." Wright asked if he was going to jail and the detective told him he would not go to jail that day but possibly "down the road." "I want to get the kids back," Wright responded and then with head in hands, emotionally he admits to the stress he had been experiencing and ultimately to having sexual contact with the child. This portion of the interview lasted only a few minutes. Whether a confession would get the kids back quicker was first broached by the defendant not the detective. The detective seized the inquiry to emphasize to Wright the necessity of his admissions. No doubt, the detective's statements played on Wright's emotions. But the question to be answered is whether Wright's will was overborne, that is, whether the pressure to admit in conjunction with the promise that the mother would have the children returned ultimately coerced an involuntary confession. Under the facts of this case and based on the totality of the circumstances, we cannot say that the trial court's finding that Wright's confession was voluntary was in error.

[¶ 10.] The judgments are affirmed.

[¶ 11.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 12.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 13.] The facts surrounding Wright's "confession" show that he was subjected to custodial interrogation without the benefit of *Miranda* warnings. Wright had a good argument that he was coerced, tricked, coached or compelled by borderline promises and misrepresentations that this was a small matter in the process of getting his children back. For this *small matter*, he received 55 years in prison. However, it appears that the heart of this argument was destroyed by defense counsel's concession that Wright was not in custody during the interrogation. In view of that concession, his arguments on the merits fall flat. Therefore, I concur in result.