SABERS, Justice.
[¶ 1.] Lenny Holman (Holman) appeals his convictions for first degree robbery and first degree burglary. Because the circuit court erred in failing to suppress Holman’s confessions, we reverse and remand for a new trial.
FACTS
[¶ 2.] On September 21, 2003, a man entered the Gold Nugget Casino in Sioux Falls, South Dakota, and used a sawed off shotgun to force the clerk to turn over approximately $7,800 dollars. Neither the clerk nor her boyfriend, who was playing video lottery, was able to identify the perpetrator because he was wearing a ski mask at the time of the robbery. The robbery remained unsolved for almost six months.
[¶ 3.] In early March, 2004, Detective Robert Harrison (Harrison) of the Sioux Falls Police Department received a tip that Holman may have been involved in the robbery. Harrison met Holman on a prior occasion when Harrison was investigating a stolen trailer. Harrison described Holman’s reluctance to cooperate with the police during the prior interview as “he [Holman] would [not] even give us the time of day.”
[¶ 4.] Harrison learned that Holman was incarcerated at the Pierce County, Nebraska jail, on charges of possession of methamphetamine. Harrison spoke with Pierce County Deputy Sheriff Joshua Bauermeister (Bauermeister) and arranged for an interrogation session with Holman. On March 10, Harrison and two other Sioux Falls detectives[1] traveled to Nebraska to interrogate Holman. Harrison did not believe Holman would be cooperative based on the prior interview in regards to the stolen trailer. At the time of the interview, Holman had been incarcerated for approximately ten days.
[¶ 5.] Holman had court-appointed counsel on the Nebraska charges. However, neither Harrison nor any of the other officers inquired into any allegations of criminal conduct that occurred outside of South Dakota. Holman did not request the assistance of counsel in regards to the South Dakota charges.
[¶ 6.] The interrogation took place in the Pierce County Sheriffs office. Harrison, Holman, Bauermeister, and two other Sioux Falls detectives were present. Harrison began the interview by explaining to Holman that he was investigating numerous charges including two armed robber *455 ies, a stolen trailer, stolen tools, alteration of the trailer serial number, and alteration or falsifying the title of the trailer.
[¶ 7.] The initial part of the conversation between Harrison and Holman was not recorded. Detective Harrison told Holman that it might be to his benefit to divulge various crimes he was suspected of committing. In response, Holman asked Detective Harrison “what kind of ‘deal’ [he] could get if he cooperated.” Holman testified at the motion hearing that Harrison promised “he would see to it that [Holman] was only charged with one felony” in return for Holman’s cooperation. Holman testified that Harrison left the room to make a call to Sioux Falls regarding the matter.
[¶ 8.] Bauermeister testified via deposition. He testified that it was his recollection that Harrison offered to charge Holman with only one felony in return for his cooperation. Specifically, Bauermeister testified as follows:
Q: Now when the sergeant [Harrison] said something about making a phone call so that he could possibly make a deal with Mr. Holman, was this — can you elaborate on that for me some more?
A: I don’t remember too many specifics. I just- — I do recall the sergeant leaving the room. I recall him coming back and saying that he had spoken with somebody. I don’t remember who the sergeant said he spoke with. But the sergeant did indicate that they would only — I believe the agreement was that they would only charge Mr. Holman with a certain number of crimes in return for his cooperation.
Q: Do you remember what the number of crimes was that they would only charge him with?
A: I believe it was one felony, just a single felony.
[¶ 9.] Harrison testified at the motion hearing that he never left the interrogation room to make a phone call. However, he testified to the agreement to charge Holman with only one felony as follows:
Q: And did you have authority to represent that he would in fact only be charged with one of the robberies?
A: Well, it was my investigation at the time — all these cases — and I essentially told him that I believed there was not a problem with that, which I guess I don’t normally tell people that. This was somewhat of a different circumstance ...
After the state’s attorney pressed Harrison, he testified that the deal was not an overt promise to charge Holman with one felony, but rather a promise to recommend that Holman be charged with only one felony.
[¶ 10.] The balance of the interrogation session was audio recorded by Bauermeis-ter. Holman confessed to involvement in multiple crimes, including the robbery of the Gold Nugget Casino. At the beginning of the interrogation session, Holman and Harrison engaged in the following exchange:
Holman: You’re going to do this the way you said, right?
Harrison: Yes. I told you hey, only one charge—
Towards the end of the interrogation session, Holman inquired whether Harrison was going to “do what [Harrison] said he was going to do?” Harrison replied “yep.”
[¶ 11.] Holman was charged with one count of robbery in the first degree under SDCL 22-30-1 and 22-30-6, and one count of burglary in the first degree under SDCL 22-32-1(3), both of which are felonies punishable by imprisonment in the *456 state penitentiary. A Part II habitual offender indictment was also filed but was dismissed before trial. Holman entered a plea of not guilty to the two felony charges and made a motion to suppress the confession obtained by Harrison. The circuit court denied Holman’s motion. In its findings of fact, the circuit court found that Harrison had told Holman that there would be no “promised deals” but only a “recommendation” that Holman be charged with one felony. The circuit court did not address the deposition testimony of Bauermeister.
[¶ 12.] Holman was tried on the robbery and burglary charges. At trial, Holman’s confession was introduced by the State. Holman was convicted on both charges. Holman raises one issue on appeal.
Whether the circuit court erred in denying Holman’s motion to suppress his confession because it was not shown to be voluntary.
Standard of Review
[¶ 13.] “Although there are often subsidiary factual questions deserving deference, the voluntariness of a confession is ultimately a legal question.” State v. Tuttle, 2002 SD 94, ¶ 20, 650 N.W.2d 20, 30 (citing Miller v. Fenton, 474 U.S. 104, 116, 106 S.Ct. 445, 452-53, 88 L.Ed.2d 405, 414-15 (1985) (additional citations omitted)). This Court reviews the entire record and makes an independent determination of voluntariness. Id. (citing Beckwith v. United States, 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1, 8 (1976) (additional citations omitted)). The State must establish the voluntariness of a confession by a preponderance of the evidence. Id. ¶ 21 (citing Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377, n. 5 (1984)).

Whether the confession was shown to be voluntary

[¶ 14.] The Due Process Clause of the Fourteenth Amendment prohibits the admission into evidence, over objection, of a confession obtained through coercion. Payne v. State of Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975 (1958). Over a century ago, the United States Supreme Court pronounced that a confession cannot be obtained by “any direct or implied promises, however slight, nor by the exertion of any improper influence.” Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). However, the Court later rejected a bright line rule in favor of a totality of the circumstances test. See Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986).
[¶ 15.] We have adopted the United States Supreme Court’s totality of the circumstances test in determining whether a confession was involuntary. Tuttle, 2002 SD 94, ¶ 22, 650 N.W.2d at 31. “The factual inquiry centers on (1) the conduct of law enforcement officials in creating pressure and (2) the suspect’s capacity to resist that pressure.” Id. (citing Mincey v. Arizona, 437 U.S. 385, 399-401, 98 S.Ct. 2408, 2417-18, 57 L.Ed.2d 290, 304-06 (1978)). As to the second factor:
we examine such concerns as the defendant’s age; level of education and intelligence; the presence or absence of any advice to the defendant on constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; the use of psychological pressure or physical punishment, such as deprivation of food or sleep; and the defendant’s prior experience with law enforcement officers and the courts. Finally, deception or misrepresentation by the officer receiving the statement may also be factors for the trial court to *457 consider; however, the police may use some psychological tactics in interrogating a suspect.
Id. (internal citations and quotations omitted). Additionally, the coercion or improper conduct of law enforcement must be a direct cause of the confession. Id. ¶ 23, 650 N.W.2d at 31.
[¶ 16.] In Tuttle, we held that a confession was involuntary where a police officer told the suspect that “his report could be written to make things look good” or he could “write it up that [the suspect was] not cooperating, and [was] being a real jerk about it.” Id. ¶ 25, 650 N.W.2d at 32. We concluded the suspect’s confession was not “the product of a rational intellect and a free will.” Id. (quoting Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 249 (1960)). Tuttle concerned threats of adverse consequences if the suspect was not willing to cooperate. We did not have occasion to examine whether implied or express promises of leniency could render a confession involuntary. However, we did cite case law suggesting that promises to tell a prosecutor of cooperation may be permissible. Id. ¶ 26 (citing State v. Tapia, 159 Ariz. 284, 767 P.2d 5, 11 (1988)).
[¶ 17.] Other courts have addressed the issue of whether promises of leniency can render a confession involuntary. In State v. Rezk, the New Hampshire Supreme Court held that there was little distinction between threats of harsher punishment and promises of leniency. 150 N.H. 483, 840 A.2d 758, 764 (2004). The court noted “a specific promise of leniency should the defendant confess is akin to a threat of harsher punishment should the defendant remain silent.” Id. (citing Leach v. State, 311 Ark. 485, 845 S.W.2d 11, 13 (1993)). However, the court did acknowledge that general encouragement to cooperate or specific promises to merely recommend leniency are permissible. Id. (citing United States v. Harrison, 34 F.3d 886, 891 (9th Cir.1994)).
[¶ 18.] In Harrison, the Ninth Circuit indicated that there was no meaningful distinction between threats of harsher punishment and specific promises of leniency that would render the former constitutionally impermissible, and the latter constitutionally firm. 34 F.3d at 891. The court noted, “both types of statements are simply different sides of the same coin: ‘waive your rights and receive more favorable treatment’ versus ‘exercise your rights and receive less favorable treatment.’ ” Id. Two of our neighboring state supreme courts have followed this rationale. See State v. Mullin, 249 Iowa 10, 85 N.W.2d 598, 603 (1957) (confession involuntary where police officer stated that more mercy would be granted if the suspect told the truth); State v. Biron, 266 Minn. 272, 123 N.W.2d 392, 396 (1963) (confession involuntary where police told suspect that if he did not cooperate they could not “go up there and get any break for [him]”).
[¶ 19.] In this case, the circuit court found that Harrison told Holman there would be no specific deal, but rather a recommendation of leniency. After reviewing the record, we conclude the circuit court’s finding is not supported by the evidence. The transcript is devoid of any instance where Harrison informed Holman that he was merely going to make a recommendation of leniency. Instead, Harrison responded to Holman’s request for an assurance by stating “I told you hey, only one charge.” Holman and Bauermeister both testified that the “deal” was supposed to be that Holman be charged with one felony. Holman, as a criminal defendant, may have had an incentive to lie. Bauer-meister, a deputy sheriff, did not.
*458 [¶ 20.] Harrison’s testimony was that he thought he had authority to enter into the agreement and that he did not believe “there would be a problem.” It was only after further inquiries from the state’s attorney that Harrison began referring to the deal as merely a recommendation. There is also the matter of Harrison leaving the room to make a phone call, presumably to the state’s attorney office. Harrison denies this allegation. However, Holman and Bauermeister both testified that they recalled the incident. The circuit court did not address this incident in its findings of fact.
[¶ 21.] Normally, we give deference to the circuit court on factual issues. However, as mentioned, the United States Supreme Court has mandated that appellate courts make an independent determination of voluntariness. The record does not support the circuit court’s finding that Harrison told Holman that he would merely make a recommendation. Instead, the record reflects that Harrison acted as though he could enter into a jailhouse plea bargain with Holman and confirmed the deal with the state’s attorney.
[¶ 22.] In terms of Holman’s ability to resist Harrison’s promise of leniency and confirmation, we note the following factors in favor of voluntariness: Holman was thirty years old at the time of the interrogation; he had experience in dealing with law enforcement; the interrogation only lasted forty-five minutes; he was not deprived of food or water and there was no physical abuse; and Holman brought up the subject of leniency in exchange for his cooperation.
[¶ 23.] The facts that support the confession as involuntary include: the promise of leniency and phone call; Holman was incarcerated at the time of the interrogation; Holman did not have the assistance of counsel during the interrogation; and Holman did “not give Harrison the time of day” during a prior interview in which Holman was not promised leniency; and Detective Harrison’s promise of leniency proved false.
[¶ 24.] In State v. Stanga, this Court considered false police promises made to induce a Miranda waiver and subsequent statement.[2] 2000 SD 129, 617 N.W.2d 486. In concluding that such promises required suppression of the statement, this Court observed:
[W]hen the police interview a suspect, they must skate a fine line. They are employed to protect the public, to solve crimes, to discover missing persons, and to determine whether missing persons have been the victims of foul play. They are authorized to interview suspects who have been advised of their rights, but they must conduct the interview without the undue pressure that amounts to coercion and without the dishonesty and trickery that amounts to false promise.
Id. ¶ 16 (citation omitted). Under the totality of circumstances, we conclude the specific promise of leniency and deception that followed directly resulted in Holman’s involuntary confession. It is undisputed that Holman had not cooperated with law enforcement in the past. Harrison did not expect to receive any information prior to promising leniency. Bauermeister testified that he did not believe Holman was going to speak to Harrison, but all of that changed when Harrison offered to charge Holman with only one felony. Under these circumstances, Holman’s confession was not the product of rational intellect *459 and free will. The State failed to meet its burden of proving Holman’s confession was voluntary. Therefore, the circuit court erred in denying Holman’s motion to suppress the confession.

Harmless v. prejudicial error

[¶ 25.] Although admission of an involuntary confession violates the Fourteenth Amendment, it does not constitute reversible error if the State can prove the error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279, 296, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991). The United States Supreme Court uses caution in conducting this analysis, noting:
A confession is like no other evidence. Indeed, “the defendant’s own confession is probably the most probative and damaging evidence that can be admitted against him.... [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.”
Id. (quoting Bruton v. United States, 391 U.S. 123, 139-140, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968)).
[¶ 26.] There was no physical evidence linking Holman to the robbery. Neither the clerk nor her boyfriend could identify Holman. The only significant evidence of guilt besides the confession was the testimony of a claimed accomplice. However, the jury was instructed that it could not base a conviction on the accomplice testimony unless it was corroborated by other evidence. The instructions provided that the confession could be used as evidence corroborating the accomplice’s testimony. Under these circumstances, the State has not met its burden of proving the involuntary confession was harmless beyond a reasonable doubt.
[¶ 27.] Reversed and remanded for trial.
[¶ 28.] KONENKAMPand MEIERHENRY, Justices, concur.
[¶ 29.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur in result.

. Neither of these two detectives testified at the motion hearing.

. "The voluntariness of an admission and the validity of a Miranda waiver-of-rights are separate but parallel inquiries.” Stanga, 2000 SD 129, ¶ 8, 617 N.W.2d at 488 (citing 2 S. Childress & M. Davis, Federal Standards of Review § 11.13, at 11-54, 55 (3d Ed. 1999)).