#24607-a-RWS

**2008 SD 94**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

  v.

ZACHARIAH PALMER RYAN,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON S. FLEMMER
Judge

* * * *

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                             and appellee.

TERRY J. SUTTON of
Sutton Law Offices, PC
Watertown, South Dakota                         Attorney for defendant
                                             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 26, 2008

OPINION FILED **10/08/08**

#24607

SABERS, Justice

[¶1.]    After a consent search revealed tablets of hydrocodone with acetaminophen and Ritalin, and a pen tube encrusted with pill residue, Zachariah Palmer Ryan was charged with three drug-related offenses.  A jury found him guilty of two charges, but acquitted him of the other.  Ryan appeals, alleging a *Batson* violation and insufficient evidence to sustain the jury's verdict.  We affirm.

**FACTS**

[¶2.]    At 1:30 a.m. on October 1, 2006, Ryan was riding as a passenger in a white Chevrolet Beretta in Sisseton, South Dakota.  Trooper Larry Englund of the South Dakota Highway Patrol observed the car make a sharp turn causing the right front wheel to go off the road.  He also noticed an exhaust leak and heard an exhaust sound coming from under the vehicle.  Trooper Englund followed the vehicle for about a block and then signaled the vehicle to stop.

[¶3.]    Upon the stop, Trooper Englund noticed the strong odor of patchouli oil, which, in his training and experience, he knew to be a strong scent used to mask marijuana odors.  He had the driver, Victoria White, accompany him to his car and obtained her permission to search her car.[1]  He also spoke with Ryan and obtained his consent to search his person.  In Ryan's front pocket, Trooper Englund found a metal cylinder with a screw-on lid that contained various prescription tablets.  Ryan explained that the pills were hydrocodone and Ritalin and he had a prescription for both, the former for back pain and the latter for attention deficient hyperactivity

---

1.    Trooper Englund did not find anything illegal during the search of White's car.

disorder. The search also revealed a pen tube that had been cut off and contained what appeared to be pill residue. Based on Trooper Englund's training and experience, he thought the pen tube may have been used for snorting or ingesting either methamphetamine or cocaine.

[¶4.] Ryan was placed under arrest and charged with three drug-related offenses: (1) ingestion of a substance other than alcohol for the purpose of becoming intoxicated; (2) unauthorized possession of a controlled substance (Hydrocodone); and (3) possession of drug paraphernalia. A trial was held on July 9 and 10, 2007. During voir dire, the State used four peremptory challenges to excuse four of the five Native Americans on the potential jury panel. Ryan objected to the peremptory challenges, claiming the State violated *Batson*. The State gave reasons for the peremptory challenges and the trial court found the State had nonracial reasons for using the peremptory challenges.

[¶5.] At the close of trial, the jury found Ryan guilty of unauthorized possession of a controlled substance and possession of drug paraphernalia. However, he was acquitted of ingestion of a substance other than alcohol for the purpose of becoming intoxicated. The trial court sentenced Ryan to ten years with four suspended upon certain conditions. He was sentenced to thirty days in the county jail for the misdemeanor possession of drug paraphernalia charge. This sentence was to run concurrently with the sentence for unauthorized possession. However, these sentences were to run consecutively to the sentence Ryan was currently serving for a third offense driving under the influence charge. Ryan appeals raising the following issues:

1. Whether the trial court abused its discretion in denying Ryan's *Batson* motion.

2. Whether the trial court erred in denying Ryan's motion for directed verdict based on insufficiency of the evidence.

## STANDARD OF REVIEW

[¶6.] "[T]he finding of intentional discrimination is a factual determination." State v. Owen, 2007 SD 21, ¶11, 729 NW2d 356, 362 (citing State v. Martin, 2004 SD 82, ¶¶13, 16, 683 NW2d 399, 403, 405). Accordingly, we review an appeal alleging a *Batson* violation for the State's use of peremptory challenges for clear error. *Id.*

[¶7.] When we examine a challenge claiming insufficient evidence:

> [W]e determine "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the Court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." State v. Owen, 2007 SD 21, ¶35, 729 NW2d 356, 367 (quoting State v. Mesa, 2004 SD 68, ¶9, 681 NW2d 84, 87). "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." State v. Swalve, 2005 SD 17, ¶5, 692 NW2d 794, 797 (quoting State v. Phair, 2004 SD 88, ¶16, 684 NW2d 660, 665 (quoting State v. Downing, 2002 SD 148, ¶22, 654 NW2d 793, 800)).

State v. Gard, 2007 SD 117, ¶12, 742 NW2d 257, 260-61.

[¶8.] **1. Whether the trial court abused its discretion in denying Ryan's *Batson* motion.**

[¶9.] The State exercised four peremptory challenges to remove four out of the five Native Americans from the jury and the State concedes that Ryan has established a prima facie case of purposeful discrimination. *See* Batson v. Kentucky, 476 US 79, 94-95, 106 SCt 1712, 1722, 90 LEd2d 69 (1986); *see also*

*Owen*, 2007 SD 21, ¶45, 729 NW2d at 369 (citation omitted).  Once a defendant has established a prima facie case, the State must come forward with race neutral explanations for exercising peremptory challenges.  *Batson*, 476 US at 97, 106 SCt at 1723, 90 LEd2d 69.  In this case, the State gave race neutral explanations, which the trial court accepted.

[¶10.]        **Juror 1**.  Juror S.S. was struck by the State because the State had prosecuted her husband, who was currently on felony probation.  S.S.'s son had also been prosecuted by the State.[2]  Ryan offered nothing further after the State gave these reasons and the court specifically noted that it "would find that there is a non-racial reason for exercising a pre-empt in the case of [S.S.] and the challenge to that peremptory challenge would be denied."

[¶11.]        **Juror 2.**  The State's race neutral explanation for C.I. is that the State recently prosecuted C.I. for third offense DUI.  **Juror 3.**  The State indicated C.S.'s mother worked for the State's attorney when she worked at Legal Services and that C.S.'s family is a neighbor to the Ryan family.  Moreover, when C.S. was a juvenile she was prosecuted by the State.  **Juror 4.**  Finally, the State explained it had prosecuted some of Juror B.W.'s children and grandchildren.  In all of these cases,

---

2.    In Ryan's brief, he argues that the use of a "gut feeling" is not a race neutral reason to exclude a juror and indicated the State simply said, "I didn't feel comfortable with her being a juror on behalf of the STATE."  However, the record reflects that the State's complete sentence was:  "Because of those relationships or the past history with her family [State's prosecution of her husband and son], I didn't feel comfortable with her being a witness or a juror on behalf of the State. . . .  I continue to have concerns about that because of prior history with her husband and her son."

the trial court accepted these explanations as non-racially motivated and denied the *Batson* challenge.

[¶12.]     In *Owen*, the State removed seven out of eleven Native Americans from the potential jury. In that case, we noted "'that the findings underlying a district court's *Batson* analysis depend largely on credibility evaluations,'" which requires deference to the trial court. 2007 SD 21, ¶47 n9, 729 NW2d at 369 n9 (quoting United States v. Maxwell, 473 F3d 868, 871, 873 (8thCir 2007)). Moreover, the explanations found to be race neutral in *Owen* are similar to the explanations in this case. Given the record and our case law, Ryan has not demonstrated that the trial court was clearly erroneous when it accepted the State's explanations as race neutral and found the State had not engaged in purposeful discrimination when it exercised its peremptory challenges.

[¶13.]     Ryan argues, however, that the trial court did not complete the third step of the *Batson* analysis: whether the prosecutor's race neutral explanation in exercising its challenges provide[s] "a 'clear and reasonably specific' explanation of [the prosecutor's] 'legitimate reasons' for exercising the challenges." *Batson*, 476 US at 98 n20, 106 SCt at 1724 n20, 90 LEd2d 69 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 US 248, 258, 101 SCt 1089, 1096 (1981)). However, a trial court implicitly conducts this analysis when it accepts or rejects the State's explanations for use of its peremptory challenges. There are not some "magic words" the trial court must use in order to fulfill a *Batson* analysis. As demonstrated above, the State provided race neutral explanations for using its peremptory challenges and the trial court specifically noted that it accepted these explanations as race neutral.

#24607

[¶14.]      Finally, as the State indicates, Ryan did not engage in any comparative analysis; nor does the record indicate anything that suggests white jurors, who had been prosecuted by the State, had family prosecuted by the State or knew the defendant were kept on the jury, while the Native American jurors who exhibited these characteristics were struck from the jury. *See* Snyder v. Louisiana, ___ US ___, 128 SCt 1203, 1211-12, 170 LEd2d 175 (2008).[3] The trial court did not err in denying Ryan's *Batson* challenge and we affirm issue 1.

[¶15.]      **2.      Whether the trial court erred in denying Ryan's motion for directed verdict based on insufficiency of the evidence.**

[¶16.]      Ryan alleges there is insufficient evidence to sustain the guilty verdict of unauthorized possession of a controlled substance for two reasons. First, he argues there was insufficient evidence the pills were a controlled substance because the pills were not chemically analyzed and the State chemist testified he would need chemical analysis in order to determine the identity of the pills. Second, Ryan argues he had a valid prescription for hydrocodone; therefore, he claims his use of the controlled substance was authorized and not in violation of the statute.

[¶17.]      There is sufficient evidence on the record for the jury to find Ryan guilty of the offense.[4] There was testimony from pharmacists that the pills were 10

---

3.      The United States Supreme Court found a discriminatory intent by comparing the answers of white jurors with those of the minority juror who was allegedly improperly stricken from the jury. *Snyder*, ___ US at ___, 128 SCt at 1211-12, 170 LEd2d 175.

4.      Ryan only challenges the sufficiency of the evidence in relation to the unauthorized possession of a controlled substance charge and not the

(continued . . .)

mg hydrocodone with 650 mg acetaminophen. Ryan had a prescription for Hydrocodone 7.5 mg with 500 mg acetaminophen. The testimony revealed that the pills dispensed to Ryan through Indian Health Services were 20 pills containing 7.5 mg of hydrocodone and 500 mg acetaminophen. The pills in Ryan's possession were stronger than the ones obtained by his prescription. He was not authorized to possess pills of this strength and therefore was in violation of the statute.

[¶18.] Moreover, there is no need to chemically analyze the pills in order to determine whether they were hydrocodone. The pen tube residue was determined to be hydrocodone, Ryan admitted some of the pills were hydrocodone, and a urine sample taken immediately after Ryan's arrest contained hydrocodone. A pharmacist testified that the pills were 10 mg hydrocodone from the stamped markings of "Watson 503" on the pills. The pharmacist testified that he can tell what substance a pill contains by observation. While the chemists may need chemistry to determine composition, the pharmacist testified he knows the substance based on observation alone. At most there may be conflicting testimony between the chemist and pharmacist on identification of the pills, but the jury, by virtue of its verdict, resolved the conflict and believed the pharmacist could identify the type and strength of the pills. There is more than enough evidence on the record for the jury to find these pills contained 10 mg hydrocodone. Hydrocodone is a controlled substance and 10 mg was more than Ryan's prescription authorized

_____
(. . . continued)
possession of drug paraphernalia charge. The residue in the pen was chemically analyzed and found to be hydrocodone.

and more than he could obtain from Indian Health Services. It is well settled that we will not set aside a guilty verdict "'if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilty.'" *Gard*, 2007 SD 117, ¶12, 742 NW2d at 260 (quoting State v. Swalve, 2005 SD 17, ¶5, 692 NW2d 794, 797) (citations omitted). There was sufficient evidence to find Ryan guilty of unauthorized possession of a controlled substance and the jury's verdict stands.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.